# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| ALBERT BOYD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-cv-1357 |
| STEPHEN WRIGHT et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

The plaintiff, currently incarcerated in Danville Correctional Center, alleges that he was denied an adequate religious diet during his incarceration at Hill Correctional Center.[1] The defendants move for summary judgment, which, for the reasons below, will be granted in part and denied in part, leaving for trial only the First Amendment religious practice claim against Defendant Rundle, the dietary manager at Hill Correctional Center.

## SUMMARY JUDGMENT STANDARD

Summary judgment is mandated "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, evidence is viewed in the light most favorable to the non-moving party and material factual disputes are resolved in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Beraha v. Baxter Health Corp.*, 956

---

[1]This case was originally part of a two-plaintiff case, *Walker v. Wright*, 09-cv-1177 (Peoria Division, Judge Baker). The plaintiffs' claims were separated into two separate cases after they were transferred to different prisons. (10/21/09 order).

F.2d 1436, 1440 (7th Cir. 1992). The party moving for summary judgment has the burden of demonstrating that no disputed material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the movant satisfies this burden, the non-movant must then "set out specific facts showing a genuine issue for trial," rather than resting on allegations and pleadings. *See* Fed. R. Civ. P. 56(e)(2).

**FACTS**

This case concerns the plaintiff's incarceration in Hill Correctional Center from 2008 to September, 2010, when he was transferred to Danville Correctional Center.

The plaintiff is a practicing African Hebrew Israelite, a religion which requires him to be a strict vegan. That means that he must refrain from eating animal product or byproducts, including "meat, dairy products, eggs or any products made from or with any part of an animal." (d/e 61-5). (Aff. of Suzann Griswold ¶ 3).[2]

There is a master vegan menu circulated to all adult IDOC prisons, which has been created for the IDOC by Suzann Griswold, a registered dietitian who works as the food service administrator for IDOC. (Griswold Aff. ¶¶ 1-2). The plaintiff does not dispute that the master vegan menus "are designed to ensure that recipients receive a nutritionally adequate vegan diet

---

[2]The defendants do not attach Griswold's affidavit, instead citing to the affidavit filed in *Walker v. Wright*, 09-1177. All the evidence upon which the defendants rely should be filed in this case, even if the same evidence has already been filed in a separate case. CDIL-7.1(D)(b)("Include as exhibits to the motion all relevant documentary evidence."). However, the plaintiff does not object and does appear to have been provided the affidavit, so the Court will consider it. The court will direct the clerk to file Griswold's affidavit in this case.

2

that offers approximately 2300-2500 calories per day." (Griswold Aff. ¶ 4). According to Ms. Griswold, "The Food Service Managers at individual facilities are directed to serve the food items and portion sizes as indicated in the vegan menu. However, occasional substitutions of food items that meet necessary dietary restrictions may become necessary due to the unavailability of certain food items." (Griswold Aff. ¶ 6).

The plaintiff does not appear to dispute that the master vegan menu complies with his religious tenets and provides adequate nutrition. He does contend that fresh fruits and vegetables should be provided, along with brewer's yeast, sesame seeds, black strap molasses, parsley, kelp, wheat germ, bean sprouts, and whole grains. (*see* d/e 61-2, p. 3). However, there is no evidence that the lack of these items makes the master menu nutritionally inadequate. The menu may not be as palatable or varied as it could be, but that is not the standard. The Constitution requires prisons to "'provid[e] nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *quoting Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980); *see also Board v. Farnham*, 394 F.3d 469, 482 (7th Cir. 2005)("requiring that prisoners and pre-trial detainees receive a nutritionally adequate diet assists one in combating illness and contributes to the prevention of future health problems.")(citation omitted); *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994)("'A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required.'")(*quoting Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). Thus, on this record, the Court finds as an undisputed fact that the IDOC master vegan menu is nutritionally and calorically adequate, if followed, and also complies with the plaintiff's religious tenets.

The primary factual dispute seems to be whether the master vegan menu was actually followed at Hill Correctional Center. The plaintiff maintains that the master menu was regularly *not* followed. (d/e 61, p. 2). In particular, he and other inmates aver that animal byproducts such as "milk solids, whey, beef type gelatine, and turkey meat" were substituted for the vegan items listed on the master menu. (d/e 61, p. 2). He contends that the "defendants deliberately ordered inmate cooks to prepare and serve soy crumbles mixed with ground turkey meat, wheat bread that contained whey, mashed potatoes that contained milk solids and jello that contained beef type gelatine." (d/e 61, p. 5).[3]

Inmate Alzonta Magee avers that he worked as a vegan diet cook at Hill during part of the relevant time[4] and "was ordered almost daily by dietary supervisor Jeff Carson, James Rundle, Richard Gerald and [illegible] to prepare food for the vegan trays that was infused with animal byproducts such as mashed potatoes that contained milk solids, wheat bread that contained whey and soy bits that were mixed with ground turkey meat." (d/e 61-4, p. 8, ¶ 2). Magee avers that he informed the supervisors that these foods contained animal byproducts, and, in response, the supervisors (including Defendant Rundle) told him to serve the food or be fired. *Id.* at ¶ 3. He also avers that the supervisors (including Rundle) ordered him to serve half-portions to the vegans, to cook the vegan meals in dirty pots and pans that contained dried-on meat and grease, and never to serve the vegans fresh vegetables. *Id.* at ¶¶ 5-7. Magee avers that

---

[3]The plaintiff also asserts that the soy milk provided was not calcium-fortified, resulting in a calcium deficiency, but he has no evidence that he suffered from a calcium deficiency. (d/e 61, p. 6).

[4]Magee avers that he worked as a vegan cook at Hill "on two occasions once in 2008 and once in 2009 . . . ." (d/e 61-4). He does not say how long these stints were.

4

he asked the supervisors (including Rundle) why the vegan food was prepared in this way, and the supervisors responded that "they wanted to get a lot of the vegans to stop receiving vegan trays because there were too many vegans on the diet list." *Id.* at ¶ 8. The plaintiff filed affidavits from other inmates to the same effect. Many of those affidavits do not mention Rundle by name, but it appears undisputed that Rundle was the dietary manager in charge, and thus an inference arises that the other food supervisors were acting at Rundle's direction. (Rundle Aff. ¶ 1).[5] [6] One inmate, Joseph Moore, avers that Rundle "told [him] personally while Albert Boyd [] was present that the conditions of the vegan diet would remain poor until the inmates who are on the vegan diet stop writing grievances on the diet." (d/e 61-8, p. 3, ¶ 9).

In the merit review order, Judge Baker identified a potential First Amendment claim, and possible claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Illinois Religious Freedom and Restoration Act (IRFRA). In October, 2010, the case was transferred to this Court, because Judge Baker is no longer handling Peoria cases.

**ANALYSIS**

**I.       The claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") will be dismissed because no relief is available on the facts of this case.**

RLUIPA provides that:

---

[5] As with Griswold's affidavit, the defendants do not attach Rundle's affidavit, instead directing the court to *Walker v. Wright*, 09-1177. In the interest of expediency, the court will direct the clerk to file Rundle's affidavit in this case.

[6] Judge Baker dismissed the food supervisors without prejudice in his order of July 15, 2009, on the grounds that "[t]he food supervisors named as defendants were only taking orders from their superiors, as the plaintiff confirmed at the merit review hearing. The food supervisors do not determine what food will be served." (7/15/09 order p. 2). The parties do not dispute that conclusion.

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - -
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. Section 2000cc-1(a). RLUIPA applies to prisons and supplies a private right of action. 42 U.S.C. Section 2000cc-2-(a). However, the Seventh Circuit held in *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009), that RLUIPA claims cannot proceed against defendants in their individual capacities, and also held that RLUIPA does not waive sovereign immunity for States.

Thus, under *Nelson*, the RLUIPA claim can proceed in federal court against the defendants in their official capacities only, and only insofar as the plaintiffs seek injunctive or declaratory relief. In this case, injunctive relief is no longer available, since the plaintiff is no longer incarcerated at Hill. The plaintiff counters that he is still entitled to injunctive relief because the food service at Hill has not changed. However, the possibility that he might be transferred back to Hill is too remote to warrant injunctive relief. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996)("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'")(quoted cite omitted); *Stewart v. McGinnis*, 5 F.3d 1031, 1037-38 (7th Cir. 1993)(inmate was not entitled to equitable relief where he was no longer housed in prison where alleged violations had occurred). Accordingly, the RLUIPA claim must be dismissed.

**II. The claim for damages under the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 et seq. ("IRFRA"), will be dismissed because the claim may not proceed against the defendants in their individual capacities.**

Only the Court of Claims has jurisdiction over the IRFRA claim for damages to the extent it is against the defendants in their official capacities. *Nelson v. Miller*, 570 F.3d 868, 885 (2009). Whether the IRFRA allows an action for damages against the defendants in their individual capacities has not been addressed by the Seventh Circuit Court of Appeals nor by an Illinois court, to this Court's knowledge. A federal district court in the Northern District of Illinois, however, has concluded that such damages are not available, and this Court finds the reasoning persuasive.

In *Banks v. Dougherty*, 2010 WL 747870 (N.D. Ill. 2010)(unpublished), the district court acknowledged that the IRFRA creates a private right of action against "a government," which is defined as "a branch, department, agency, instrumentality, and official (or other person action under color of law) of the State of Illinois . . . ." 775 ILCS § 35/5. Even though an individual would fall under this definition, the court in *Banks* concluded that an action against a State employee individually was in effect an action against the State, because the individual's duties to the plaintiff arose solely from the individual's employment with the State. 2010 WL 747870 at *11.

This court agrees with *Banks*. The source of the defendants' legal duty under the IRFRA arises solely from their state employment, not from any independent source of law. *See also Jinkins v. Lee*, 807 N.E.2d 411, 418 (2004)(action is against state and must be brought in Court of Claims where employee was acting within scope of authority and performing normal functions of job, and duty breached not owed to general public). If the defendants were not employed by the State, they would have no legal duty to provide the plaintiff a religious diet. Decisions on what meals would be provided to vegan IDOC inmates are "uniquely

governmental," all actions within the scope of, and by reason of, the defendants' employment with IDOC. *Compare with Jinkins v. Lee*, 209 Ill.2d 320 (2004)(State mental health professionals' legal duties to avoid malpractice stemmed from source independent of state employment). Accordingly, the Court concludes that the plaintiff cannot pursue a damages claim under the IRFRA against the defendants in their individual capacities. As no claim for equitable relief remains, this claim must be dismissed in its entirety.

### III. The First Amendment religious practice claim against Defendant Rundle survives summary judgment, but not against Defendants Wright, Smith and Acevedo.

Under the First Amendment, the plaintiff is entitled to practice his religion "insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990). A First Amendment claim arises if the plaintiff "is being put to an improper choice between adequate nutrition and observance of the tenets of his faith, . . . ." *Id.* Under *Turner v. Safley*, 482 U.S. 78 (1987), a burden on the plaintiff's ability to practice his religion will be constitutional if it is "reasonably related to legitimate penological interests." 482 U.S. at 87.

The *Turner* factors are not very helpful here, however, because the dispute centers on whether a burden existed at all. The defendants do not dispute that they are required to serve the plaintiff a nutritionally adequate vegan diet, and the parties agree that the master vegan menu is such a diet. The question, then, is whether the plaintiff has submitted enough evidence to demonstrate a factual question for the jury regarding whether he did consistently receive a nutritionally adequate vegan diet. Defendant Wright, the acting warden of operations, avers that:

> • "All efforts are made to provide vegan meals per the master menu and to ensure that the meals are properly served, nutritionally adequate and correct in caloric

content and palatability.

- "Menus are subject to change, based on the availability of menu items."

- "Nutritionally equivalent items are substituted for items that may not be available at the time of the meal."

(Wright Aff., ¶¶ 3-5); (Rundle Aff., ¶¶ 3, 5). Defendant Rundle, the dietary manager, avers that, "Vegan meals are prepared in the kitchen under the supervision of the kitchen Correctional Food Service Supervisor(s) and in accordance with Departmental rules and regulations. Occasional substitutions of similar foods that meet necessary dietary restrictions are necessary due to product availability." (Rundle Aff., ¶ 4).

The problem with these affidavits is that they are too vague and conclusory to defeat the plaintiff's affidavits. Of course the prison may substitute "nutritionally equivalent items" if those items are also free of animal products and byproducts—that practice would be reasonably related to concerns of food availability. That is not the issue here. The issue here is whether adequate substitutions meeting dietary restrictions were actually made. The plaintiff's evidence allows a plausible inference that animal products and byproducts not meeting dietary restrictions were regularly substituted, even after Defendant Rundle was put on notice that the substituted items were not vegan. According to the plaintiff's evidence, Rundle also ordered the food supervisors to serve half-portions to the vegans and to prepare the vegan meals in dirty pots. Additionally, according to the affidavits submitted by the plaintiff, Rundle admitted that he was doing this in order to discourage inmates from choosing the vegan meal and/or to discourage

inmates from filing grievances about the vegan meals.[7]

Rundle does not specifically dispute any of this evidence; he did not file a reply. Additionally, the defendants offer no specifics on what the substitutions were, or how often substitutions were made. They offer no list of what was actually served versus what was on the vegan menu, nor any list of what purchases were made for the vegan meals.[8] They offer no sanitation or public inspection reports to defeat the plaintiff's claim that the vegan meals were prepared in dirty pots and pans. In short, the defendants have the burden at this stage, and they have not met it.

The court thus concludes that a First Amendment claim survives against Rundle arising from Rundle's alleged deliberate failure to provide a nutritionally adequate diet to the plaintiff that complied with the plaintiff's religious beliefs.

However, this claim does not survive summary judgment against Defendants Wright, Acevedo and Smith. A defendant cannot be held liable for his subordinate's constitutional violations solely because he is in charge. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)("The doctrine of respondeat superior can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights."). "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable . . . .

---

[7]The plaintiff has never pursued a First Amendment retaliation claim, and the court does not add one sua sponte at this late date.

[8]The plaintiff did file purchase orders filled out by Rundle, which show that Rundle did order on occasion soy milk, peanut butter, dehydrated potatoes, and "tvp" (which the court presumes means textured vegetable protein). The court cannot tell, though, whether these foods were ordered in sufficient amounts or whether any of the other items on the vegan menu were ordered.

10

(citations omitted). Gross negligence is not enough either. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)(citations omitted).

A reasonable juror could not find on this record that the warden (Defendant Acevedo) or the assistant warden (Defendant Wright) were personally responsible for the failure to provide adequate vegan meals. They were not responsible for ordering the food or putting together the menu plan. On this record, as far as they knew the master vegan plan was being substantially followed. For example, the plaintiff's grievance about the beef gelatin was denied based on Rundle's response that the jello did not contain animal byproducts. (d/e 61-5, p. 5). The response to another grievance stated that, per the dietary manager, "vegan meals are served per the master menu from Springfield, except in rare times when an item is not locally available." (d/e 1-1, p. 11). Yet another grievance response indicated that Rundle said that he had adequately ordered supplies for vegan meals and that it was his policy to follow the master vegan menu. (d/e 1-1, p. 19). Acevedo and Wright did not violate the Constitution by believing Rundle's version of events, even if it turns out that Rundle was being untruthful.

The last remaining defendant, Defendant Smith, was the business office administrator. It appears that Smith was one of the individuals who approved food purchase requests. The plaintiff appears to contend that Smith was responsible for the purported failure to order vegan meal supplies, but there is no evidence of that. In fact, Smith's name is on some of the purchase requests that appear to approve the purchase of vegan items. There is no evidence that Smith failed to approve any purchase request for a vegan item, nor is there any evidence that he was

responsible for determining what vegan food needed to be ordered. Accordingly, summary judgment is mandated for Smith as well.

The case will therefore proceed to trial on the plaintiff's First Amendment claim against Rundle, though the plaintiff has an uphill battle. To this point, he has not offered any evidence of physical injury other than vague allegations of losing weight and feeling fatigued. In order to plead a plausible First Amendment Claim against Defendant Rundle for money damages for mental or emotional injury allegedly suffered by the plaintiff, he would have to plead "physical injury" to avoid the litigation bar of section 1997e(e) of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e). This section bars actions by inmates "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See also Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006) ("unelaborated" claim of 50 pound weight loss and depression not enough to show "physical injury"). Although this lawsuit has surpassed the pleading stage, the plaintiff would still have the burden of proving at trial that he suffered "physical injury" as the result of Defendant Rundle's violation of his First Amendment rights, otherwise, Plaintiff could not recover money damages for any claimed mental or emotional injury. The availability of only nominal damages could be a significant factor in disposing of this case. At this time, only a pretrial motion for summary judgment is available to test this aspect of the case. In the interest of judicial economy, the Court will invite Defendant to make this matter the basis for summary judgment disposition.

## CONCLUSION

In sum, the RLUIPA claim must be dismissed because injunctive relief is no longer available. The IRFRA claim must also be dismissed because the claim is essentially one against

the State of Illinois that cannot be heard in this Court. On the First Amendment claim, Defendant Rundle has not met his burden of showing the absence of a material dispute regarding whether he provided an adequate vegan diet to the plaintiff. Defendants Wright, Acevedo and Smith, however, have met their burden and will be dismissed.

IT IS THEREFORE ORDERED:

1) The defendants' motion for summary judgment is granted in part and denied in part (d/e 49). The motion is denied with respect to the First Amendment claim against Defendant James Rundle. The motion is granted with respect to the RLUIPA claim and the IRFRA claim, and with respect to all claims against Defendants Wright, Smith and Acevedo.

2) By March 31, 2011, Defendant Rundle is directed to file a supplemental summary judgment motion addressing whether the plaintiff suffered a physical injury for purposes of 42 U.S.C. § 1997e(e).

3) The clerk of the court is directed to docket as a group entry in this case the affidavits of Stephen Wright, James Rundle and Suzann Griswold which were filed in *Walker v. Wright*, 09-1177 (d/e 50-4, pp. 1-2; d/e 50-5, pp. 1-24).

4) The clerk is directed to send the plaintiff a copy of *Banks v. Dougherty*, 2010 WL 747870 (N.D. Ill).

5) A final pretrial conference is scheduled for August 19, 2011, at 1:00 p.m.. The plaintiff shall appear by video conference. The defendants' counsel shall appear in person. The parties are directed to submit the proposed final pretrial order by July 29, 2011. The defendants are reminded that they bear the responsibility for

preparing the proposed final pretrial order.

6) The clerk is directed to issue a video writ to secure the plaintiff's appearance at the final pretrial conference.

7) The proposed final pretrial order must include the names of all witnesses to be called at the trial. Nonparty inmate-witnesses will give their trial testimony by video. Other nonparty witnesses may appear by video at the Court's discretion. The proposed pretrial order must include the names and addresses of any witnesses for whom trial subpoenas are sought. The parties are responsible for obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees. Fed. R. Civ. P. 45;

8) A jury trial is scheduled for September 12, 2011, at 9:00 a.m., at the U.S. Courthouse, 100 N.E. Monroe Street, Peoria, Illinois. The plaintiff and Defendant Rundle shall appear in person. The Clerk is directed to issue the appropriate process to secure the personal appearance of the plaintiff at the trial and the video appearances of the video witnesses.

Entered this  28th day of February, 2011.

                                                        s/Joe B. McDade
                                                    JOE BILLY MCDADE
                                                    Senior United States District Judge