UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ALBERT BOYD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-cv-1357 |
| STEPHEN WRIGHT et al., | ) |
| Defendants. | ) |

**OPINION AND ORDER**

The plaintiff, currently incarcerated in Danville Correctional Center, proceeds pro se on claims arising from the alleged denial of a nutritionally-adequate religious diet during his incarceration in Hill Correctional Center. On February 28, 2011, Judge McDade granted summary judgment to the defendants on all claims except for the First Amendment claim against Defendant James Rundle, the purported dietary manager at Hill Correctional Center during the relevant time. (d/e 62). In that order, Judge McDade also directed Defendant Rundle to "file a supplemental summary judgment motion addressing whether the plaintiff suffered a physical injury for purposes of 42 U.S.C. § 1997e(e)." (d/e 62, p. 13). In March, the case was reassigned to this Court. (3/18/2011 text order).

Now before the Court is Defendant Rundle's supplemental summary judgment motion. For the reasons below, the Court grants the motion and extends the trial date in order to allow for possible mediation.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is required "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment has the burden of demonstrating that no disputed material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden may be met by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The non-movant must then "set out specific facts showing a genuine issue for trial," rather than resting on allegations and pleadings. *See* Fed. R. Civ. P. 56(e)(2). Evidence is viewed in the light most favorable to the non-moving party, and material factual disputes are resolved in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

## ANALYSIS

The plaintiff alleges that his religion requires him to eat a vegan diet. He alleges that the vegan diet provided by Hill Correctional Center from 2008 up to his transfer to Danville Correctional Center in September, 2010, was frequently not vegan and/or nutritionally inadequate to sustain his health. The plaintiff avers that he suffered "sever[e] mental anguish" by "the thought of being compelled to consume meat and animal byproducts." (d/e 70, p. 18, ¶ 5).

**I. Compensatory Damages for Mental/Emotional Suffering**

42 U.S.C. § 1997e(e) states:

(e) Limitation of recovery

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Thus, if there is no evidence that the plaintiff suffered a physical injury from the alleged inadequate diet, he cannot recover compensatory damages for his mental or emotional injuries arising therefrom. However, nominal damages would still be available, and possibly punitive damages if the record supported them (*but see discussion infra*). *Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006)(affirming award of nominal damages on First Amendment retaliation claim, and affirming denial of damages for mental injury under § 1997e(e)); *Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003)(nominal and punitive damages are available for Eighth Amendment violation, even if compensatory damages for mental suffering not available under § 1997e(e)); *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999)("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained.").

The plaintiff does not dispute that his medical records show that his weight fluctuated between 180 and 185 pounds from the year 2000 to September 2010, the date he was transferred from Hill Correctional Center to Danville Correctional Center. This is evidence that he suffered no significant weight loss. The plaintiff points out that there are no weight measurements from the period after August 26, 2006(when he weighed 183 pounds) to May 7, 2008 (when he weighed 185 pounds), or from May 8, 2008, to the date of his transfer. That, however, is not evidence that he suffered any weight loss. His bald assertion of "periodic weight loss" (d/e 70, p.7) is not a sufficient showing of physical injury under § 1997e(e), even assuming weight loss is considered a physical injury under that section. *See Pearson*, 471 F.3d at 744 ("unelaborated claim" of depression and 50-pound weight loss not enough to sufficiently prove physical injury under § 1997e(e)). He also does not dispute that he testified in his deposition conducted in

April, 2010, that he had not seen a doctor in about two years. And, he had a physical exam in May, 2008, which was normal. (d/e 69-4, pp. 1-3). In sum, the plaintiff's claimed weight loss is wholly unsubstantiated and does not amount to a showing of physical injury under § 1997e(e).

The plaintiff asserts that he complained in grievances and to health care of "fatigue, headaches, dirrhea [sic], muscle apathy and muscles cramps," and constipation, all of which he believes were caused by his lack of nutrition and the unauthorized meat in his vegan meals. (d/e 70, p.7). The Court assumes that the plaintiff means "muscle atrophy," not "muscle apathy."[1] The plaintiff's assertion that he suffered muscle atrophy is speculation unsupported by any competent, admissible evidence. He of course has personal knowledge of suffering cramps, diarrhea, fatigue, and constipation, but his belief that these symptoms were caused by the food he was eating (or not eating) is also based on speculation. Similarly, his list of what minerals were missing from his diet and the resulting potential health problems is not admissible evidence. (d/e 70, p. 14).

Even assuming, arguendo, that the plaintiff could prove that the food he was provided (or not provided) caused these problems, these complaints are too *de minimis* to constitute a showing of physical injury under § 1997e(e). Section 1997e(e) does not define physical injury, nor has the Seventh Circuit defined the term, other than its statements in *Pearson* that unelaborated allegations are not a sufficient showing of physical injury. However, in the Court's research, the Circuits that have addressed the question have concluded that the physical injury "need not be significant, but must be more than *de minimis*." *Mitchell v. Horn*, 318 F.3d 523,

---

[1] The plaintiff might mean "mental apathy," as he uses that term sometimes, but that would not be a physical injury.

536 (2003)(joining Fifth, Ninth and Eleventh Circuits in "requiring a less-than-significant-but-more-than-*de minimis* physical injury")[2]; *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002)(citing cases from Second, Fifth and Eleventh Circuits); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010)("We have indicated that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward."). This Court adopts that approach as well, for to allow *de minimis* injuries to satisfy § 1997e(e) would thwart the statute's goal of reducing frivolous prisoner litigation. *Oliver*, 289 F.3d at 627. In the Court's opinion, the plaintiff's vague complaints of periodic diarrhea, fatigue, and muscle cramping are too *de minimis* to constitute a showing of physical injury under § 1997e(e).[3] Accordingly, his claim for compensatory damages for mental/emotional suffering will be dismissed.

## II. Punitive Damages

As the Court discussed above, § 1997e(e) does not bar claims for nominal or punitive damages.

Although the parties were not directed to brief the issue, the possibility of punitive damages appears remote on the current record. Punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it

---

[2] The Court in *Mitchell* disagreed with the Ninth Circuit's statement that the Second Circuit had squarely addressed the issue, but that issue is not relevant. What is relevant is that the Court found no published Circuit precedent ruling that *de minimis* injuries were sufficient to satisfy Section 1997e(e).

[3] The plaintiff's complaints about diarrhea were made a grievance filed in 2007, with regard to the fruit juice served. The plaintiff asked in that grievance to be served 100% fruit juice. (d/e 70, pp. 15-16).

involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Estate of Moreland v. Dieter*, 395 F.3d 747, 756-57 (7th Cir. 2005)(in reviewing punitive damages, court considers "whether the conduct evinced an indifference to or reckless disregard for the health or safety of others"); Seventh Circuit Pattern Jury Instruction 7.24 ("Conduct is in reckless disregard of one's rights if, under the circumstances, it reflects complete indifference to Plaintiff's safety or rights."). Punitive damages may be awarded in the absence of compensatory damages, *Timm v. Progressive Steel Treating, Inc.,* 137 F.3d 1008, 1010 (7th Cir. 1998), but punitive damages must be in proportion to the reprehensibility of the misconduct, the harm suffered, and the need for deterrence. *BMW of North America v. Gore*, 517 U.S. 559, 575 (1996); *Kunz v. DeFelice*, 538 F.3d 667, 679 (7th Cir. 2008). A district court's decision whether to submit the issue of punitive damages to a jury is reviewed for abuse of discretion. *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007).

In his prior order on summary judgment, Judge McDade wrote that:

Inmate Alzonta Magee avers that he worked as a vegan diet cook at Hill during part of the relevant time and "was ordered almost daily by dietary supervisor Jeff Carson, James Rundle, Richard Gerald and [illegible] to prepare food for the vegan trays that was infused with animal byproducts such as mashed potatoes that contained milk solids, wheat bread that contained whey and soy bits that were mixed with ground turkey meat." (d/e 61-4, p. 8, ¶ 2). Magee avers that he informed the supervisors that these foods contained animal byproducts, and, in response, the supervisors (including Defendant Rundle) told him to serve the food or be fired. Id. at ¶ 3. He also avers that the supervisors (including Rundle) ordered him to serve half portions to the vegans, to cook the vegan meals in dirty pots and pans that contained dried-on meat and grease, and never to serve the vegans fresh vegetables. Id. at ¶¶ 5-7. Magee avers that he asked the supervisors (including Rundle) why the vegan food was prepared in this way, and the supervisors responded that "they wanted to get a lot of the vegans to stop receiving vegan trays because there were too many vegans on the diet list." Id. at ¶ 8. The plaintiff filed affidavits from other inmates to the same effect. Many of

those affidavits do not mention Rundle by name, but it appears undisputed that
Rundle was the dietary manager in charge, and thus an inference arises that the
other food supervisors were acting at Rundle's direction. (Rundle Aff. ¶ 1). One
inmate, Joseph Moore, avers that Rundle "told [him] personally while Albert
Boyd [] was present that the conditions of the vegan diet would remain poor until
the inmates who are on the vegan diet stop writing grievances on the diet." (d/e
61-8, p. 3, ¶ 9).

(Judge McDade's summary judgment order, d/e 62, pp. 4-5).[4] In denying summary judgment for

Defendant Rundle, Judge McDade also wrote that:

The plaintiff's evidence allows a plausible inference that animal products and
byproducts not meeting dietary restrictions were regularly substituted, even after
Defendant Rundle was put on notice that the substituted items were not vegan.
According to the plaintiff's evidence, Rundle also ordered the food supervisors to
serve half-portions to the vegans and to prepare the vegan meals in dirty pots.
Additionally, according to the affidavits submitted by the plaintiff, Rundle
admitted that he was doing this in order to discourage inmates from choosing the
vegan meal and/or to discourage inmates from filing grievances about the vegan
meals.

(Judge McDade's summary judgment order, d/e 62, pp. 9-10).

In the Court's opinion, these inferred facts allow a plausible inference that Rundle is

liable, but not that punitive damages are warranted. As discussed above, there is no evidence that

the plaintiff suffered from any physical injury as a result of Rundle's conduct. The plaintiff has

no competent, admissible evidence that he suffered from any nutritional deficiencies, much less

that Rundle might have been aware of any possible risk. Further, many of the purported

admissions were made by food workers other than Rundle. Statements or actions by other food

workers cannot be attributed to Rundle's state of mind regarding his intent to violate the

plaintiff's rights, and those statements would not be admissible to do so. Misconduct by other

---

[4]As Judge McDade noted in his order, there is no First Amendment retaliation claim in this case. (d/e 62, p. 10, n. 7)("The plaintiff has never pursued a First Amendment retaliation claim, and the court does not add one sua sponte at this late date.").

food workers would not be attributable to Rundle unless Rundle ordered them to take those actions.  Further, sporadic or periodic problems with the vegan diet would not support an award of punitive damages.  For example, some of the evidence submitted by the plaintiff shows that Rundle did order textured vegetable protein and soy milk, which cuts against a finding that he callously disregarded the plaintiff's rights.

The Court is not ruling on the punitive damages issue now, but mentions it so that the parties may be fully informed.  If it turns out at trial that punitive damages are not available, the plaintiff is looking at obtaining, at most, $1.00 in nominal damages, plus his costs of suit (the $350 filing fee and perhaps copying costs).  Injunctive relief is no longer available because the plaintiff has been transferred to a different prison.

It appears to the Court that mediation might be a viable alternative to a trial in this case.  The parties will be given an opportunity to have the Court refer the case to a Magistrate Judge for attempted mediation.  Mediation "is a non-binding settlement process involving a neutral mediator who assists the parties to overcome obstacles to effective negotiation."  CDIL-LR 16.4(B).  The final pretrial and trial dates will be extended in order to allow for possible mediation.

IT IS THEREFORE ORDERED:

1) The defendants' motion for summary judgment regarding the plaintiff's lack of physical injury is granted (d/e 66).  The plaintiff's claim for compensatory damages for mental or emotional injuries is dismissed, to the extent he pursues such a claim.

2) By May 31, 2011, the parties are directed to inform the court in writing if they agree to attempt to mediate the remainder of this dispute pursuant to Local Rule 16.4(E).  If both parties

agree, the court will appoint an available Magistrate Judge to conduct the mediation. The clerk is directed to mail the plaintiff a copy of Local Rule 16.4.

3) The final pretrial and trial dates are vacated and reset as follows. The final pretrial conference is rescheduled to January 5, 2012 at 11:15 a.m.. The plaintiff shall appear by video conference, and the defendant's counsel shall appear in person. The proposed final pretrial order is due December 29, 2011. The jury trial is rescheduled to February 13, 2012, at 9:00 a.m. by personal appearance before this Court at the U.S. Courthouse, 100 N.E. Monroe Street, Peoria, Illinois.

Entered this 10th day of May, 2011.

                                                 **s/ James E. Shadid**
                                                 JAMES E. SHADID
                                        United States District Judge